UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTLEY MULLEN,<br><br>Plaintiff,<br><br>v.<br><br>NF V SETTLERS RIDGE OP CO, LLC,<br><br>Defendant. | Case No. 2:23-cv-1959<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Bartley Mullen ("Plaintiff"), by and through his undersigned counsel, brings this action against NF V Settlers Ridge Op Co, LLC d/b/a Courtyard by Marriott Pittsburgh Airport/Settlers Ridge ("Defendant") and alleges as follows:

## INTRODUCTION

1. Plaintiff is a bilateral, above-knee amputee who is dependent upon a standard size wheelchair for mobility. The seat of his standard size wheelchair is approximately 18-inches from the ground.

2. Defendant operates a hotel at 5100 Campbells Run Road, Pittsburgh, PA 15205 ("Subject Property"). Marriott's website describes the Subject Property as follows:

> You've arrived at a whole new kind of stay at the Courtyard by Marriott Pittsburgh Airport Settlers Ridge. The thoughtfully appointed guest rooms offer you a perfect place to work, relax, and recharge at the Pittsburgh Airport hotel. Enjoy our fresh, plush bedding, modern and flexible spaces and well lit work space with free Wi-Fi at this Pittsburgh Settlers Ridge hotel. We are an ideally located Settlers Ridge hotel that is within walking distance to great dining, shopping & entertainment options. Conveniently located near PNC Park, Acrisure Stadium, Pittsburgh airport and Downtown Pittsburgh."[1]

---

[1] Available at https://www.marriott.com/en-us/hotels/pitsr-courtyard-pittsburgh-airport-settlers-ridge/overview/ (last accessed on November 13, 2023).

1

3.      Plaintiff frequents the area in which Defendant's hotel is located to shop and dine. He is in the process of planning a trip to California, and is likely to stay at a hotel near the Pittsburgh International Airport the night before his flight.  However, the top surfaces of the mattresses in the Subject Property's purportedly accessible rooms are 29-inches from the ground, thereby rendering it difficult if not impossible for Plaintiff to patronize Defendant's hotel, because he would not be able to independently transfer from his standard 18-inch high manual wheelchair to the surface of Defendant's 29-inch high beds.

## TITLE III OF THE AMERICANS WITH DISABILITIES ACT

4.      President George H.W. Bush signed the Americans with Disabilities Act ("ADA") into law on July 26, 1990.  At the signing ceremony, President Bush stated:

> [T]his act is powerful in its simplicity.  It will ensure that people with disabilities are given the basic guarantees for which they have worked so long and so hard: independence, freedom of choice, control of their lives, the opportunity to blend fully and equally into the American mainstream . . . . [T]he ADA ensures access to public accommodations such as restaurants, hotels, shopping centers, and offices . …
>
> With, again, great thanks to the Members of the United States Senate, leaders of whom are here today, and those who worked so tirelessly for this legislation on both sides of the aisle.  And to those Members of the House of Representatives with us here today, Democrats and Republicans as well, I salute you.  And on your behalf, and on behalf of this entire country, I now lift my pen to sign this Americans with Disabilities Act and say:  Let the shameful wall of exclusion finally come tumbling down . . . .

*See* Transcript of Remarks By The President During Ceremony for the Signing of the Americans with Disabilities Act of 1990 (July 26, 1990) (National Archives and Records Administration, available at https://www.archives.gov/research/americans-with-disabilities/transcriptions/naid-6037492-remarks-by-the-president-during-ceremony-for-the-signing-of-the-americans-with-disabilities-act-of-1990.html) (last accessed November 13, 2023).

5.     The rules that govern a public accommodation's obligation to offer accessible goods and services to individuals with qualified disabilities are set forth in Title III of the ADA. Title III's general accessibility mandate states:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

6.     Congress tasked the Department of Justice ("DOJ") with creating specific scoping rules to implement the general accessibility mandate. 42 U.S.C. § 12186(b). Pursuant to this directive, the DOJ promulgated the ADA Accessibility Guidelines ("ADAAG"). There are two ADAAGs that set forth technical requirements that a public accommodation must meet in order to achieve "accessibility" with respect to those elements that are addressed by the ADAAGs: the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and its successor, the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

7.     While the ADAAG Standards provide detailed guidance regarding what a public accommodation must do to ensure that its goods and services are "accessible" in many contexts, the Standards are not comprehensive. A public accommodation must ensure that ***all*** of its goods and services are accessible, even in those instances where there are no applicable Standards:

> Where the Department has not issued specific design or technical standards, public accommodations' actions are governed by the ADAs general nondiscrimination requirements and the ADA's overarching equal access mandate. These requirements include the obligation to make reasonable modifications where necessary to provide people with disabilities access to the public accommodation's goods and services.[2]

---

[2] *See* Statement of Interest ("SOI") of the United States of America, *Migyanko v. Aimbridge Hospitality, LLC*, 2:20-cv-10195 (ECF 57), attached hereto as Exhibit A. The attached Statement of Interest contains a thorough discussion of a public accommodation's obligations under the general accessibility mandate, with a specific emphasis on the goods and services at issue in this

3

8. While hotels must offer accessible hotel rooms, and while many of the elements in "accessible" hotel rooms are regulated by specific ADAAG Standards, there are ***not*** any standards regarding hotel bed heights. Instead, bed heights are governed by the general accessibility mandate of the ADA. *See* fn. 1.

## PLAINTIFF BARTLEY MULLEN'S DESIRE TO PATRONIZE DEFENDANT'S HOTEL

9. As noted above, Plaintiff Bartley Mullen is a bilateral, above-knee amputee who relies on a manual wheelchair for ambulation.

10. Plaintiff was previously employed by the Disability Options Network ("DON") Center for Independent Living as a housing advocate. DON is located in New Castle, Lawrence County, Pennsylvania.

11. While employed by DON, Plaintiff attended disability rights conferences in different locations around the country.

12. When attending these conferences, and on other frequent occasions involving both professional and personal travel, Plaintiff would (and does) stay in hotels.

13. It was and is Plaintiff's experience that the beds in the "accessible" rooms in hotels were and are frequently too high to permit him to safely transfer from his wheelchair to the surface of the bed.

---

case. *See also Mullen v. Concord Hosp. Enterprises Co., LLC*, No. 2:20-CV-01530-RJC, 2022 WL 295880 (W.D. Pa. Feb. 1, 2022); *Migyanko v. Aimbridge Hosp., LLC*, No. 2:20-CV-1095-NR, 2022 WL 345058 (W.D. Pa. Feb. 4, 2022); *Eyler v. Garrison Pittsburgh Monroeville Opco LLC*, No. CV 21-1058, 2022 WL 1032732 (W.D. Pa. Apr. 6, 2022); and *Eyler v. Liza Luv Invs. III LLC*, No. 2:21-CV-01050-CRE, 2022 WL 2829823 (W.D. Pa. July 20, 2022).

14. During a trip to Washington D.C. to attend a disability rights conference, Plaintiff stayed in a hotel and was injured while attempting to transfer from his wheelchair to a hotel bed that was too high to permit a safe transfer.

15. Since being injured during this Washington D.C. hotel stay, Plaintiff has continued to use hotels, but he now calls those hotels in advance to confirm that the beds in their accessible rooms are low enough to permit him to safely transfer to the bed.

16. Plaintiff lives in Beaver County, Pennsylvania.

17. Plaintiff regularly travels to the Robinson area to shop and dine. He is in the process of planning a long-overdue trip to visit his family in California. In order to minimize the inherent difficulties people with limited mobility face when traveling, he intends to rent a hotel room near the airport the evening before his flight.

18. In October of 2023, Plaintiff called the published telephone number for Defendant's hotel and inquired about the height of the top surfaces of the beds in Defendant's purportedly accessible hotel rooms. He was told that the top surface of the beds in the accessible rooms was 29 inches above the floor.

19. As noted, the seat height for Plaintiff's standard size wheelchair is approximately 18 inches from the ground.

20. The high sleeping surface (29-inches) of the bed in Defendant's purportedly accessible room would render it difficult if not impossible for Plaintiff to independently transfer from his wheelchair to the bed or from the bed to his wheelchair.

21. Plaintiff can safely, easily, and independently transfer to horizontal surfaces that are approximately the same height as his wheelchair seat, such as dining chairs, toilet seats, benches, and lower passenger vehicle seats.

22. Transferring to horizontal surfaces that are significantly higher than his wheelchair seat is difficult and dangerous for Plaintiff; he must hoist his bodyweight up to the height of the higher surface using primarily upper body strength or be helped by a third party.

23. Plaintiff risks injury due to falling or straining his shoulders when transferring to higher horizontal surfaces, such as the beds in the purportedly accessible rooms in the Subject Property. As noted above, he has been injured in the past as a result of these same inaccessible conditions.

## DEFENDANT'S DISCRIMINATORY CONDUCT

24. Defendant's policy and practice of not providing accessible beds that can be safely used by a customer who is dependent upon a standard size wheelchair for mobility is discriminatory and in violation of the ADA.

25. Defendant's policy and practice of not providing adequate descriptive information to customers and potential customers regarding the accessibility of its beds is discriminatory and in violation of the ADA.

26. Plaintiff would like to stay at the Subject Property in the future with the ability to safely and independently use the hotel's sleeping beds.[3]

27. However, the lack of accessible sleeping beds in purportedly accessible rooms has deterred Plaintiff from staying at the Subject Property. The law does not require that Plaintiff actually visit the property and subject himself to injury as a result of the inaccessible beds in Defendant's ostensibly accessible rooms.

---

[3] In addition, consistent with his professional advocacy background on behalf of the disabled community, Plaintiff desires to test hotels to confirm that they are accessible to individuals with mobility disabilities and thereby increase the number of limited safe lodging options currently available to individuals with mobility disabilities.

6

28. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to provide accessible sleeping beds in its purportedly accessible rooms to persons with disabilities.

29. Defendant's discrimination violated and continues to violate Title III of the ADA, and unless Defendant is required to change its policies and practices so that Defendant's goods, services, facilities, privileges, advantages, and accommodations are accessible to individuals with disabilities, Plaintiff will continue to be denied full and equal access to Defendant's hotel and will be deterred from using Defendant's hotel.

30. In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a) Defendant offer the required number of rooms with accessible beds at the Subject Property, consistent with the ADA's room dispersal requirements;

   b) Defendant change its policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages and accommodation to individuals with disabilities related to the provision of accessible beds; and,

   c) Defendant change its policies and practices and begin providing accurate information regarding the accessibility of the beds in its accessible hotel rooms to customers and potential customers who are dependent on a standard size wheelchair for mobility.

## JURISDICTION AND VENUE

31. The claims alleged arise under Title III of the ADA, and, thus, this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

32. Personal jurisdiction exists because Defendant owns, manages, and/or operates a hotel located in this District.

33. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

**PARTIES**

34. Plaintiff, at all times relevant hereto, is and was a resident of Beaver County, Pennsylvania.

35. Plaintiff is a wheelchair user who is limited in the major life activity of walking and therefore has a qualified disability under the ADA.

36. Defendant NF V Settlers Ridge Op Co, LLC is a Delaware limited liability company doing business at 5100 Campbells Run Road, Pittsburgh, PA 15205.

**CAUSE OF ACTION**
**For Violations of 42 U.S.C. §§ 12181, *Et Seq.***

37. Plaintiff incorporates by reference each and every allegation herein.

38. Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

39. Defendant provides public accommodations under the ADA. 42 U.S.C. § 12181(7).

40. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

41. Defendant owns, manages, and/or operates a hotel, or "place of lodging," that is a place of public accommodation under Title III of the ADA. 42 U.S.C. § 12181(7).

42. Defendant has engaged in illegal disability discrimination by, without limitation, failing to ensure that the beds or sleeping surfaces in use in the purportedly accessible rooms at

the hotel it owns, manages and/or operates are readily accessible to and usable by individuals with disabilities, including individuals who use standard size wheelchairs.

43. Moreover, by failing to provide accessible beds or sleeping surfaces, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

    a) denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services, and facilities available at the Subject Property;

    b) affording individuals with mobility disabilities unequal access to goods, services, or facilities;

    c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

    d) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

44. Defendant's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to the Plaintiff.

45. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

    a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant

implementing regulations of the ADA, in that Defendant failed to take action reasonably calculated to ensure that Defendant's beds or sleeping surfaces were fully accessible to, and independently usable by, individuals with mobility disabilities;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its beds and sleeping surfaces into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that those beds and sleeping surfaces are fully accessible to, and independently usable by, individuals with disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(e)(1)(ii) directing Defendant to provide the heights of the beds in its purportedly accessible rooms to prospective guests through its reservation systems, including but not limited to any website, webpage, and telephone numbers it controls;

d. Payment of costs and reasonable attorneys' fees as provided for by law; and

e. Such other additional or alternative relief as the Court finds just and proper.

Dated: November 13, 2023                    Respectfully submitted,

*/s/ R. Bruce Carlson*
R. Bruce Carlson
Ian M. Brown
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
(724) 730-1753

*Counsel for Plaintiff*